IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **LUIS MENDIOLA, TDCJ-CID No. 1798740,** § § § | |
| **Petitioner,** § § | |
| v. § § | **EP-13-CV-30-KC** |
| **WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,** § § § § | |
| **Respondent.** § § | |

## ORDER

On this day, the Court considered the Petition for a Writ of Habeas Corpus, ECF No. 5, ("Petition") filed by Petitioner Luis Mendiola ("Petitioner") in the above-captioned case. For the reasons set forth herein, the Petition is **DENIED**.

## I.   BACKGROUND

Petitioner was incarcerated in the Sanchez Unit of the Texas Department of Criminal Justice ("TDCJ") in El Paso, Texas at the time he filed the instant Petition. Pet. 1. On June 25, 2004, Petitioner pleaded guilty to Driving While Intoxicated ("DWI") in the 168th Judicial District Court of El Paso County, Texas. State Habeas Record 2, 10-11.[1] The offense was enhanced to a felony of the third degree pursuant to Texas Penal Code Annotated § 49.09(b)(2) because Petitioner had two prior DWI convictions. *Id.* at 2, 10. On July 7, 2004, the state court

---

[1] The State Habeas Record consists of the documents filed in hard copy by Respondent on April 1, 2013. Unless otherwise noted, citations to the State Habeas Record refer to the pages numbered 1-28 that begin with the Record of Criminal Actions, Case No. 2002D03808.

1

sentenced Petitioner to five years of confinement, suspended all five years, and placed Petitioner on community supervision for five years. *Id*. at 11. On June 13, 2012, the state court revoked Petitioner's community supervision and sentenced him to a term of two years of incarceration.[2] *Id*. at 12.

---

[2] Respondent's Answer relates a different version of the procedural history, namely, that Petitioner's case was subject to deferred adjudication. *See* Answer 5-6 ("An order deferring adjudication following a plea is a final judgment for the purposes of section 2244(d)(1) . . . . The deferred-adjudication order charged [Petitioner] with a third degree felony driving while intoxicated."). Respondent's argument that one of Petitioner's grounds is time-barred is premised on the notion that adjudication was deferred. *See id*.

The State Habeas Record does not indicate that the Petitioner received deferred adjudication. Rather, it demonstrates that Petitioner was adjudged guilty in 2004. *Compare Caldwell v. Dretke*, 429 F.3d 521, 523 (5th Cir. 2005) ("An order of deferred adjudication, by definition, defers an adjudication of guilt or innocence."), *with* State Habeas Record 11 ("IT IS THEREFORE CONSIDERED AND ADJUDGED BY THE COURT: That [Petitioner] is guilty of the offense of DRIVING WHILE INTOXICATED THIRD OR MORE (TPC 49.09) and that said Defendant be punished . . . [by] confinement . . . for a period of FIVE (5) YEARS . . . . The imposition of the above sentence is suspended and the Defendant is placed on FIVE (5) YEARS Community Supervision.").

As Judge DeMoss explained in his dissent in *Caldwell*,

> [t]he two processes available under Texas statutory provisions, i.e., deferred adjudication on the one hand and probating the sentence on the other hand, are separate and distinct processes . . . . *There are two absolute essentials to a final judgment in a criminal case: first, a determination of guilt or the absence of guilt and second, if the defendant is found guilty, a sentence imposing a fine or requiring the defendant to serve time in prison as punishment for that crime*. In the circumstance of a deferred adjudication, these two essential elements are not determined at the time of the initial order for deferred adjudication, but are instead determined at some later time if, as, and when the defendant on deferred adjudication violates a condition of that deferred adjudication. *In the case of a defendant whose sentence is probated, the two essentials of determination of guilt and determination of the punishment for the crime have been determined, but for reasons separate and distinct from his guilt or punishment, the defendant is given the opportunity to serve his sentence on probation instead of in prison.*

429 F.3d at 531-32 (DeMoss, J., dissenting) (citations omitted) (emphasis added).

The outcome of the 2004 proceeding at issue here comports with Judge DeMoss's description of a probated sentence because Petitioner was "adjudged . . . guilty" and sentenced to a term of years in prison, which was then probated. State Habeas Record 11. The June 13, 2012, Judgment Revoking Community Supervision further demonstrates that there was a final judgment in 2004 because it includes an entry reading "IS ORIGINAL JUDGMENT / SENTENCE REFORMED? YES." State Habeas Record 12.

Furthermore, deferred adjudication is not permitted for DWI offenses. "In all other cases the judge may grant deferred adjudication unless the defendant is charged with an offense under Sections 49.04-49.08 Penal Code." TEX. CODE CRIM. PROC. ANN., art. 42.12, § 5(d)(1)(a). Section 49.04 prohibits driving while intoxicated, and Section 49.09, under which Petitioner was convicted, provides for enhanced penalties for repeated violations of § 49.04. *Accord, e.g.*, *State v. Goodard*, No. 01-11-01022-CR, 2013 WL 978249, at * 1 (Tex. App. Mar. 12, 2013) ("deferred adjudication[] [is] a punishment that is specifically prohibited in DWI cases.").

In light of the foregoing, the Court assumes without deciding that Petitioner did not receive deferred adjudication. As the State Habeas Record is silent on the events that transpired between the 2004 judgment sentencing Petitioner

On August 10, 2012, Petitioner, then incarcerated at the TDCJ's Middleton Unit in Abilene, Texas, received a Notice of Initial Discretionary Mandatory Review, by which the Texas Board of Pardons and Parole (the "Board") notified Petitioner that it would review his file to determine whether he was to be released to mandatory supervision. Affidavit of Christina Propes, ECF No. 22-2, at 3. The Notice directed Petitioner to submit any additional information for the Board's consideration within thirty days. *Id*. The record does not reflect that Petitioner submitted any such information. On September 19, 2012, the Board sent Petitioner a notice stating that he had been denied mandatory supervision, and explaining in very general terms why it was denied. *Id*. at 4.[3]

Petitioner filed a state application for writ of habeas corpus on November 16, 2012, which the Texas Court of Criminal Appeals denied in a brief written order on January 16, 2013. *Ex parte Mendiola,* No. WR-78771-01, 2013 WL 173195 (Tex. Crim. App. Jan 16, 2013).

---

to five years of community supervision and the 2012 revocation of community supervision, it is not clear why Petitioner remained on community supervision in 2012. It is also not clear why his community supervision was revoked. However, the circumstances and antecedents of the 2012 revocation are not relevant to the disposition of the Petition, and as the Court will discuss, the Petition is without merit regardless of whether adjudication was deferred.

[3] The relevant portion of the notice reads:

> You have been denied Mandatory Supervision Release for the reason(s) listed below. One or more components indicated in each paragraph listed below may apply, but only one is required.
>
> 9D1.  The record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation.
>
> 9D2.  The record indicates that the inmate's release would endanger the public.
>
> 1D.  The record indicates that the inmate has repeatedly committed criminal episodes or has a pattern of similar offenses that indicates a predisposition to commit criminal acts when released; or the record indicates that the inmate is a leader or active participant in gang or organized criminal activity; or the record indicates a juvenile or adult arrest or investigation for felony and misdemeanor offenses.
>
> 3D.  The record indicates excessive drug or alcohol involvement which includes possession, use or delivery in the instant offense or criminal history.

Propes Aff. 4.

3

Petitioner then filed the instant Petition on January 31, 2013. Pet. 10. As Petitioner was convicted in El Paso, Texas, and was incarcerated there when he filed the Petition, jurisdiction is proper in this District. *See* 28 U.S.C. §§ 2241(d), 124(d)(3). Respondent has filed an answer, ECF No. 22 ("Answer"), in which he acknowledges that the Petition is not successive per the terms of 28 U.S.C. § 2244(b), and that Petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b)(1). Answer 4. The Petition is thus properly before the Court.

## II. DISCUSSION

### A. Standard

The federal courts' role in reviewing state prisoner habeas corpus petitions is narrow. "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). Under 28 U.S.C. § 2254(d), a federal court must deny a habeas claim decided by a state court on the merits unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A federal court may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)

Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 786 (2011) (quotation marks and

citation omitted). "A habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id*. The Court must evaluate "the ultimate legal conclusion that the state court reached and not [] whether the state court considered and discussed every angle of the evidence." *Turner v. Epps*, 412 F. App'x 696, 700 (5th Cir. 2011) (unpublished) (quoting *Neal v. Puckett*, 286 F.3d 320, 246 (5th Cir. 2002) (en banc) (per curiam)).

A habeas petition filed by a *pro se* litigant "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, pro se litigants are still required to provide sufficient facts in support of their claims, and mere conclusory allegations are insufficient. *United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993) (citation omitted). "[E]ven pro se litigants must brief arguments to preserve them." *Johnson v. Quarterman,* 479 F.3d 358, 359 (5th Cir.2007).

**B.     Analysis**

Petitioner raises three grounds for habeas relief: he alleges that he was improperly denied back time credits; that his sentence is void because the enhancement lacked probable cause; and that he was improperly denied release to mandatory supervision.[4] Pet. 6-7. Petitioner requests declaratory and injunctive relief, "all the back time that he has served in actual custody day-for-day . . . all the due process of law he is entitled to . . . and that the State 'show cause' as to why

---

[4] Though the Petition lists four grounds, the third and fourth grounds – both of which concern mandatory supervision release – are duplicative of each other. The Court considers them collectively.

they have illegally restrained the Petitioner of his liberty." Pet. 7. Petitioner's claims fail because he makes no substantive legal or factual arguments tending to indicate that he is entitled to relief, and he thereby fails to demonstrate that the Texas court's refusal to grant him relief was unreasonable. The Court addresses each of Petitioner's proffered grounds for relief in turn.

### 1. Pre-sentence jail credits

Petitioner alleges that he was improperly denied "back time credits," and requests an order *nunc pro tunc* granting him "day-for-day of the actual time he spent in custody." Pet. 6. The Court understands Petitioner to claim that he was improperly denied pre-sentence jail credits.[5]

Petitioner's claim that he was improperly denied pre-sentence jail credits is without merit. "Under Fifth Circuit authority, there is no constitutional right to pre-sentence time credits." *King v. Director, TDCJ-CID*, No. Civ. A. 604CV552, 2005 WL 1399654, at *5 (E.D. Tex. June 10, 2005) (citing *Jackson v. Alabama*, 530 F.2d 1231, 1237 (5th Cir. 1976)). The only exception to that general rule is when "a person is held for a bailable offense, cannot make bail due to indigency, and is sentenced to the statutory maximum for the offense for which he is convicted." *Id*. That exception does not apply here, as Petitioner does not allege that he could not make bail due to indigency, the maximum penalty for a felony of the third degree in Texas is ten years, and Petitioner received a sentence of two years. *See* Affidavit of Charley Valdez, ECF No.

---

[5] The Texas Court of Criminal Appeals dismissed this claim "pursuant to *Ex Parte Ybarra*, 149 S.W.3d 147 (Tex. Crim. App. 2004)." *Mendiola*, 2013 WL 173195, at *1. *Ybarra* discussed the procedure under state law for seeking pre-sentence jail time credit, and noted that such a claim is not properly the subject of a habeas petition. *See id*. The Texas court did not address Petitioner's rights, if any, under federal law. The Court must therefore determine whether the alleged denial of pre-sentence jail credit means that Petitioner is being held in violation of federal law. So long as a fairminded jurist might conclude that the Texas Court of Criminal Appeals's ultimate decision to deny habeas relief was correct as a matter of federal law, the Court will not disturb that ruling. *See Harrington*, 131 S. Ct. at 786.

22-1 at 2; Texas Penal Code Ann. § 12.34(a). Petitioner's claim that he was denied pre-sentence jail credit is thus not cognizable on federal habeas review.

Even if Petitioner's claim were cognizable on federal habeas review, his conclusory assertion that he was denied credit, unsupported by any allegation as to the time period for which he was denied credit, does not support habeas relief. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (citation omitted). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

Finally, Petitioner's conclusory assertion that he was denied jail credit is undermined by his TDCJ record. The record indicates that he was awarded pre-sentence jail credits for three separate periods totaling over seven months. *See* Valdez Affidavit 3. In keeping with that record, Petitioner's two-year sentence, which was imposed on June 13, 2012, had a "Begin Date" of November 4, 2011, and a "Maximum Discharge Date" of November 3, 2013. *Id*. The record is therefore clear that Petitioner did receive pre-sentence jail credits.

In sum, the decision by the Texas Court of Criminal Appeals to deny this claim for habeas relief was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *See Harrington*, 131 S. Ct. at 786-87. The Court must therefore also deny this claim for relief.

## 2. Probable cause for enhancement

Petitioner next requests that the Court "void sentence and enhancement under Sec. 44.29, Penal Code."[6] Petitioner states that a prosecutor may not "put unfounded allegations in the hope that a plenitude of accusations will make the Petitioner look like a criminal," and, per Rule 3.09(a) of the Texas Disciplinary Rules of Professional Conduct, must "refrain from prosecuting or threatening to prosecute a charge that [he] knows is not supported by probable cause." Pet. 6. The Court understands Petitioner to allege that the enhancement allegation in his indictment, upon which his sentence was based, was not supported by probable cause.[7]

Petitioner's claim that the enhancement to the DWI charge lacked probable cause is time-barred. 28 U.S.C. § 2244(d) provides in pertinent part that

> **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
>> . . . .
>> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

---

[6] Respondent correctly notes that the Texas Penal Code lacks a Section 44.29. Respondent "assumes [Petitioner] meant to refer to" Sections 49.04 and 49.09 – i.e., those prohibiting DWI and prescribing the enhancement at issue here. *See* Answer 15 n.7. The Court, however, suspects that Petitioner refers to Section 44.29 of the Texas Code of Criminal Procedure, which discusses the *effect* of the reversal of a conviction or sentence and is therefore inapplicable to this habeas proceeding.

[7] The Texas Court of Criminal Appeals found only that "[Petitioner]'s claims that challenge his conviction are without merit." *Mendiola*, 2013 WL 173195, at *1. The Court therefore examines the merits of Petitioner's claim to determine whether the Court of Criminal Appeals' conclusion was unreasonable. *See* n.4, *supra*.

Petitioner was sentenced on July 7, 2004. State Habeas Record 11. He did not directly appeal, and his time to appeal expired after thirty days on August 6, 2004. *See* Tex. R. App. P. 26.2(a)(1). The expiration of the time to directly appeal triggered the one-year period in which he could file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(a). Petitioner raises no argument that a statutory or equitable toll of the limitations period applies, nor can the Court identify one. Petitioner likewise does not argue that the infirmity of which he complains was not discoverable by due diligence at the time of his conviction. The one-year period in which to file a federal habeas petition therefore expired on August 5, 2005, and this claim for relief is time-barred.[8]

To the extent Petitioner had some cognizable objection to the sufficiency of the enhancement allegation, he waived it by pleading guilty. The grand jury indicted Petitioner for "Driving While Intoxicated 3rd or More," and specified in the indictment that Petitioner had previously been convicted of two DWI offenses, one of which occurred within ten years of the primary offense. State Habeas Record 2. Petitioner thereafter signed a plea of guilty to "Driving While Intoxicated Third or More Offense," in which he stated "I . . . admit all of the allegations in the indictment . . . and confess that I committed the offense as charged in the indictment." *Id.* at 3, 6. Petitioner likewise pleaded "True" to the motion to revoke his community supervision. *Id.* at 12-13. "A plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction." *United States v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002) (citation omitted). A defect in the enhancement allegation would not be jurisdictional because "[a]n enhancement allegation . . . is merely a pleading. It

---

[8] As discussed in n.1, *supra*, Respondent asserts that Petitioner received a deferred adjudication such that the State Court did not "adjudicate his guilt" until his community supervision was revoked on June 13, 2012. *See* Answer 3. If so, the one-year period to file a federal habeas petition nevertheless began on July 7, 2004, because "an order of deferred adjudication community supervision, in addition to an order of straight or regular community supervision, is a judgment for purposes of section 2244." *Caldwell*, 429 F.3d at 528.

contains no elements of the offense. It does not convey jurisdiction upon the trial court." *Brooks v. State*, 921 S.W.2d 875, 878 (Tex. App. 1996), *aff'd* 957 S.W.2d 30 (Tex. Crim. App. 1997). Petitioner therefore waived any objection to the sufficiency of the enhancement allegation by pleading guilty.

Finally, Petitioner makes no substantive argument to the effect that the enhancement lacked probable cause and/or that his sentence was otherwise improper as a matter of federal law. As noted, "[m]ere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang*, 691 F.2d at 799 (citation omitted). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross* 694 F.2d at 1011.

Petitioner has not demonstrated that the decision by the Texas Court of Criminal Appeals to deny relief regarding the enhancement and the sentence was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *See Harrington*, 131 S. Ct. at 786-87. The Court must therefore also deny this claim for relief.

### 3. Release to mandatory supervision

Petitioner argues that he has a liberty interest in mandatory supervision release ("MSR") such that any denial of MSR must comply with due process. Because, Petitioner claims, the sum of his good conduct time and his calendar time exceed the length of his sentence, the Court

should grant him MSR. Pet. 7.[9] Respondent argues that Petitioner received all the process that was due, and that MSR was properly denied. Answer 16-19.

The Texas MSR statute provides that "a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Tex Gov't. Code § 508.147(a). However,

> (b) An inmate may not be released to mandatory supervision if a parole panel determines that:
>
> > (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and
> >
> > (2) the inmate's release would endanger the public.
>
> (c) A parole panel that makes a determination under Subsection (b) shall specify in writing the reasons for the determination.

Tex Gov't. Code § 508.149(b)-(c).[10]

This statute creates a "legitimate, although limited, expectation of release" in which inmates have a liberty interest. *Ex parte Geiken*, 28 S.W.3d 553, 558-59 (Tex. Crim. App. 2000); *see also Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007) (same) (citing *Geiken,* 28 S.W.3d at 558-59). "[Because] a liberty interest is created by the statute, due process requires notice and a meaningful opportunity to be heard." *Geiken*, 28 S.W.3d at 560 (citing *LaChance v.*

---

[9] The Texas Court of Criminal Appeals did not address this claim in its order denying Petitioner's state habeas petition. The Court therefore examines the merits of Petitioner's claim to determine whether the Court of Criminal Appeals' conclusion was unreasonable. *See* n.4, *supra*.

[10] Though it is not relevant to the disposition of this federal habeas petition, the Court notes that Petitioner's premise – that a prisoner "shall be released to MSR" when "good conduct time" plus "calendar time served" equal the length of the sentence, Pet. 6 – is incorrect as a matter of state law in light of the foregoing statute. "A Texas inmate cannot compute his sentence by adding good time credits to the time he has actually served (flat time)-it merely reflects when he is eligible for [parole or] mandatory supervision, not that he is absolutely entitled to immediate release." *Revilla v. Thaler*, No. 4:122-CV-339-A, 2011 WL 4529777, at *3 (N.D. Tex. Sept. 29, 2011) (citation omitted). Indeed, Petitioner acknowledges that there is merely a "presumption that MSR will be granted," and that "the release decision here is necessarily subjective and predictive." Pet. 7.

*Erickson*, 522 U.S. 262 (1998)). In the normal case, an inmate must be given notice of the month and year in which he will be reviewed for release on mandatory supervision at least thirty days before the review takes place. *Ex parte Retzlaff*, 135 S.W.3d 45, 50 (Tex. Crim. App. 2004). Such notice is required so as to allow the inmate sufficient opportunity to submit materials on his behalf, and because "material submitted too early may be out-of-date or superceded by other information or events by the time the review is actually undertaken." *Id*. "Due process, though, does not require that an inmate receive a live hearing before the Board." *Ex Parte Long*, No. WR-64125-01, 2006 WL 560132, at *1 (Tex. Crim. App. Mar. 8, 2006) (not designated for publication) (citing *Geiken*, 28 S.W.3d at 559). "If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release." *Geiken*, 28 S.W.3d at 560 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 16 (1979)). "Due process does not require that the Board provide the particulars in the inmate's file upon which it rested the decision to deny release." *Id*. (citations omitted).

For the following reasons, the record reflects that Petitioner was accorded all the process he was due, in that he received notice, an opportunity to be heard, and information as to why he did not qualify for early release.

First, Petitioner received sufficient notice because he was informed of the impending review more than thirty days before it was held. *See* Propes Aff. 3. Although an inmate must typically be given notice of the month and year when the Board will conduct its review, such notice is not an absolute right. *See Retzlaff*, 135 S.W.3d at 50 n.18 (recognizing that designating a specific month for review may not always be practical). However, "written notice that an inmate will be reviewed at some unspecified time in the future, coupled with a request that he

submit relevant materials 'as soon as possible,' is constitutionally deficient notice." *Id.* at 50. Moreover, "to establish a denial of procedural due process, petitioner must show substantial prejudice" stemming from the deficiency of the notice. *Brown v. Stephens*, No. 4:13-CV-709, 2013 WL 6189608, at *4 (N.D. Tex. Nov. 26, 2013) (citing *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (additional citation omitted)).

Here, the notice informed Petitioner that he had thirty days to submit any relevant materials and stated that the Board would make its determination before Petitioner's projected release date, but it did not indicate what that date was, nor did it give any other indication as to when the hearing would occur. Propes Aff. 3. The notice was not facially deficient under *Retzlaff*, because, although it stated that Petitioner would be reviewed at an unspecified time, it specified the time frame in which he was to submit materials. *See Retzlaff*, 135 S.W.3d at 50. Beyond that, Petitioner does not argue that he was prejudiced by the failure to notify him of the month of the hearing, nor can the Court identify any such prejudice. Petitioner appears to have submitted no materials for the Board's consideration, and in any event, the hearing occurred only ten days after the time to submit materials expired. *See* Propes Aff. 4. The Court therefore finds that Petitioner suffered no prejudice from the imperfect notice, and accordingly holds that the notice complied with the requirements of due process.

Second, Petitioner had sufficient opportunity to be heard because he could submit to the Board any materials he wished it to review. *See* Propes Aff. 3; *McDonald v. Quarterman*, No. 4:06-CV-214-A, 2007 WL 1989599, at * 5 (N.D. Tex. July 2, 2007) ("[A] meaningful

opportunity to be heard [consists of] an opportunity to tender or have tendered to the Board information in support of release.") (citing *Geiken*, 28 S.W.3d at 559-60).

Third, the Board informed Petitioner of the respects in which he fell short of qualifying for early release by sending him an explanation listing four reasons why he did not so qualify. Propes Aff. 4; *see* n.3, *supra*. Due process requires nothing more. *See Geiken*, 28 S.W.3d at 560 (citing *Greenholtz,* 442 U.S. at 16).

Petitioner has failed to demonstrate that the Texas Court of Criminal Appeals unreasonably denied his claim requesting mandatory supervised relief. The Court must therefore also deny this claim for relief. *See Harrington*, 131 S. Ct. at 786-87.

### III. CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As explained above, the Petition has not made a substantial showing of the denial of a constitutional right, nor has Petitioner advanced any non-conclusory factual or legal argument that his rights were denied. Accordingly, the Court finds that it should deny Petitioner a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, Petitioner Luis Mendiola's Petition for a Writ of Habeas Corpus, ECF No. 5, is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's civil cause is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability.

**SO ORDERED.**

**SIGNED** this 20th day of December, 2013.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE